OPINION
Defendant-Appellant/Cross-Appellee Wheeling Lake Erie Railway Company (hereinafter "appellant") appeals from the February 25, 1999, May 7, 1999, June 29, 1999, August 16, 1999, and December 2, 1999, Judgment Entries of the Stark County Court of Common Pleas. Plaintiff-Appellee/Cross-Appellant Cris A. Bonacorsi (hereinafter "appellee") appeals from the September 3, 1999, Judgment Entry of such court.
 STATEMENT OF THE FACTS AND CASE
On July 13, 1996, appellee Cris Bonacorsi was injured when the motorcycle he was driving struck the front wheels of a freight train owned by appellant Wheeling Lake Erie Railway Company. The incident occurred at the Howe Road railroad crossing in Brimfield Township, Ohio. As a result of the collision, appellee suffered severe injuries including an amputated left leg, a collapsed lung, a pelvic fracture and a lacerated left arm. Thereafter, on July 10, 1998, appellee filed a complaint against appellant in the Stark County Court of Common Pleas. Appellee, in his complaint, alleged that appellant was negligent "in failing to install active warning devices, in failing to eliminate view obstructions caused by the foliage surrounding its crossing, failing to operate the train in a safe and lawful manner, including maintaining a proper lookout and maintaining control over the train so that it could avoid a collision, and by failing to properly sound the train's horn and bell." Appellee, who also alleged that appellant's conduct constituted willful and wanton misconduct, sought punitive damages in addition to compensatory damages. An answer was filed by appellant on August 10, 1998. Two Motions for Summary Judgment were filed by appellant on January 25, 1999. Appellant, in one of the motions, argued that it was entitled to judgment as a matter of law based on appellee's negligence and willful and wanton misconduct. In its second Motion for Summary Judgment, appellant argued that it was entitled to summary judgment on appellee's claim of inadequate signalization since such claim was preempted by federal law. A brief in opposition to both motions was filed by appellee on February 8, 1999. On February 19, 1999, appellant filed a separate Motion for Partial Summary Judgment on appellee's punitive damage claim. Four days later, appellant filed a reply brief in support of its January 25, 1999, Motions for Summary Judgment. Pursuant to a Judgment Entry filed on February 25, 1999, the trial court overruled appellant's Motion for Summary Judgment on the issue of appellee's negligence and wanton and willful misconduct, finding that there were genuine issues of fact. As memorialized in a separate Judgment Entry filed the same day, the trial court also overruled appellant's Motion for Summary Judgment on this issue of inadequate signalization. In overruling such motion, the trial court stated that appellant had failed to establish that the crossbuck at the Howe Road railroad crossing was installed pursuant to a federally funded plan and that appellant had failed to establish that "the program [involving the installation of warning devices] had the approval of the FHWA [Federal Highway Administration] as a Federal Aid Project." Subsequently, on March 1, 1999, appellee filed a brief in opposition to appellant's Motion for Summary Judgment on the issue of punitive damages. Pursuant to a Judgment Entry filed on March 4, 1999, the trial court overruled such motion. With leave of court, appellant, on March 23, 1999, filed a second Motion for Summary Judgment on appellee's claim of inadequate signalization. Once again, appellant argued that such claim was preempted by federal law. In support of its motion, appellant submitted an affidavit signed by Susan Kirkland, the Manager of Grade Crossing Safety Programs, including the Ohio Buckeye Crossbuck Program, for the Ohio Rail Development Commission. Kirkland, in her affidavit, stated in part, as follows: 2. The Ohio Buckeye Crossbuck Program is a statewide research project providing for the evaluation of the Buckeye Crossbuck through the installation of both modified crossbuck signs and Buckeye Crossbuck signs at all Ohio passive public grade crossings, including Wheeling Lake Erie Railway passive grade crossings. 3. The Ohio Buckeye Crossbuck Program was a federally-funded plan. The modified standard crossbuck signs and Buckeye Crossbuck signs that were installed by the Wheeling Lake Erie Railway under the Ohio Buckeye Crossbuck Program were installed with federal money. 4. As explained in the Agreement between the Ohio Department of Transportation and the Wheeling Lake Erie Railway Company, attached as "Exhibit 1", the Ohio Buckeye Crossbuck Program was a Federal-aid project and the construction was financed with one hundred percent (100%) federal funds . . . 6. The Ohio Buckeye Crossbuck Program was approved by the Federal Highway Administration as a Federal-aid project.
Appellee later filed a Motion to Strike Paragraphs 3, 4, and 6 of Susan Kirkland's affidavit, arguing that Kirkland lacked personal knowledge of the conclusions made in such paragraphs. While the trial court declined to grant such motion, the trial court, as memorialized in a Judgment Entry filed on May 7, 1999, again overruled appellant's second Motion for Summary Judgment on the issue of inadequate signage. The trial court specifically held that "Kirkland's broad statement that the program "was approved by the Federal Highway Administration as a Federal-aid project" does not establish that the program had the Secretary's specific approval of a warning system." After appellant filed a motion requesting, in part, that the May 7, 1999, Judgment Entry overruling appellant's second Motion for Summary Judgment be vacated, the trial court, pursuant to a Judgment Entry filed on June 29, 1999, overruled such motion. The trial court, in its June 29, 1999, entry, held that the principle of federal preemption was not applicable since "[w]hile federal funds may have been used in the purchase and/or installation of the Buckeye crossbuck signs at the Howe Road crossing, there is no evidence that the Federal Highway Administration approved the Buckeye crossbuck signs as being adequate to protect motorist safety at such crossing." Subsequently, a jury trial commenced in this matter on July 6, 1999. On July 14, 1999, the jury returned with a verdict in favor of appellee and against appellant and awarded appellee damages in the amount of $1,664,200.00. The jury, in Interrogatory One-A, indicated that it found appellant negligent in the following respects: "Two prior accidents; railroad did not initiate change in signals and signs. Proving ordinary care. Plaintiff unable to see the train." The jury, in its responses to the Interrogatories, further found that appellant and appellee were each 50% negligent and that their negligence was the proximate cause of appellee's injury. A Judgment Entry awarding appellee judgment against appellant in the amount of $832,100.00 was later entered by the trial court. Two weeks after the jury's verdict, appellee filed a motion for a new trial on the issue of punitive damages and a motion requesting prejudgment interest. On August 23, 1999, appellant filed a Motion for Judgment Notwithstanding the Verdict and a Motion for a New Trial. Subsequently, the trial court, pursuant to a Judgment Entry and Order filed on September 3, 1999, overruled appellee's Motion for a New Trial on the issue of punitive damages. In addition, after reviewing appellant's Motions for a new Trial and for Judgment Notwithstanding the Verdict, the briefs in opposition to the same and appellant's reply briefs, the trial court, pursuant to a Judgment Entry filed on December 2, 1999, overruled both motions. Following a hearing on appellee's Motion for Prejudgment Interest, the trial court, as memorialized in a Judgment Entry filed on December 2, 1999, awarded prejudgment interest to appellee in the amount of $302,100.00. In a Judgment Entry filed on December 28, 1999, the trial court corrected its December 2, 1999, entry to state that prejudgment interest would be calculated at the rate of 10% per year from July 13, 1996, the date of the accident. Appellant, in its briefs before this Court, now raises the following assignments of error:
 I. THE TRIAL COURT ERRED IN FAILING TO GRANT WHEELING'S SUMMARY JUDGMENT MOTION ON PLAINTIFF'S INADEQUATE-SIGNALIZATION CLAIM AND IN SUBMITTING THAT ISSUE TO THE JURY WHEN THAT THE [SIC] CLAIM WAS PRE-EMPTED BY FEDERAL LAW.
 II. THE TRIAL COURT ERRED IN FAILING TO GRANT DEFENDANT'S MOTIONS FOR A DIRECTED VERDICT AND FOR JUDGMENT NOTWITHSTANDING THE VERDICT.
 III. THE TRIAL COURT ERRED IN FAILING TO SUBMIT THE ISSUE OF PLAINTIFF'S RECKLESSNESS TO THE JURY.
 IV. THE TRIAL COURT ERRED IN INSTRUCTING THE JURY THAT THE RAILROAD'S DUTY TO INSTALL EXTRA-STATUTORY WARNINGS AT ITS CROSSINGS WAS ONE OF "ORDINARY CARE," RATHER THAN ONE APPLYING ONLY TO EXTRA-HAZARDOUS CROSSINGS.
 V. THE TRIAL COURT ERRED IN CHARGING THE JURY ON CLAIMS THAT WERE UNSUPPORTED BY THE EVIDENCE AND ON ALLEGED DUTIES THAT THE DEFENDANT DID NOT OWE.
 VI. THE TRIAL COURT ERRED IN ITS RULINGS ON THE ADMISSION OF EVIDENCE.
 VII. THE TRIAL COURT ERRED IN AWARDING PREJUDGMENT INTEREST.
Appellee, in turn, raises the following assignment of error in his cross-appeal:
 THE TRIAL COURT ERRED AS A MATTER OF LAW IN REFUSING TO SUBMIT THE ISSUES OF WILLFUL AND WANTON MISCONDUCT AND PUNITIVE DAMAGES TO THE JURY.
 I
Appellant, in its first assignment of error, argues that the trial court erred in failing to grant appellant's Motion for Summary Judgment on appellee's inadequate signalization claim. We agree. Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. Smiddy v. The Wedding Party, Inc. (1987), 30 Ohio St.3d 35, 36. Civ.R. 56(C) states in pertinent part: Summary Judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law . . . A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor.
Pursuant to the above rule, a trial court may not enter a summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the non-moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. Vahila v. Hall (1997), 77 Ohio St.3d 421, 429, citing Dresher v. Burt (1966), 75 Ohio St.3d 280. It is based upon this standard we review appellant's first assignment of error. As is stated above, appellant filed a total of three separate motions arguing that appellee's inadequate signalization claim was preempted by federal law. The trial court, in its February 25, 1999 Judgment Entry denying appellant's first Motion for Summary Judgment on such issue, held that appellant had failed to establish that the crossbuck at the Howe Road crossing was installed pursuant to a federally funded plan and that the program had the approval of the FHWA. Appellant, with leave of court, later filed a second Motion for Summary Judgment on the pre-emption issue. In support of such motion, appellant attached Susan Kirkland's affidavit in which she stated, based on her personal knowledge, that the Ohio Buckeye Crossbuck Program was a federal aid project that was financed with federal funds. However, the trial court once again denied appellant's Motion for Summary Judgment, stating in its May 7, 1999, Judgment Entry, in part, as follows: "After due consideration and in light of Gollihue v. Consolidated Rail Corporation (1997), 120 Ohio App.3d 378, the court finds that there remain genuine issues of material fact which preclude summary judgment. Kirkland's broad statement that the program "was approved by the Federal Highway Administration as a Federal-aid project ," does not establish that the program had the Secretary's specific approval of a warning system. The Gollihue court cited Shots v. CSX Transp. (C.A. 7, 1994), 38 F.3d 304, summarizing that "the Secretary of transportation's approval of a state railroad agreement to install reflectorized crossbucks with federal funds was not a determination that these devices would adequately protect every crossing covered by the agreement."
Finally, in its June 29, 1999, Judgment Entry , the trial court noted that while federal funds may have been used with respect to the Buckeye crossbuck signs at the Howe Road crossing, there was no evidence that the FHWA had approved such signs. Because of the conflict among federal Courts of Appeals as to whether the FRSA [Federal Railroad Safety Act], by virtue of 23 C.F.R. Sections 646.214(b)(3) and (4) (1999), preempts state law tort claims concerning a railroad's failure to maintain adequate warning devices at crossings where federal funds were used in the installation of the devices, the United States Supreme Court granted certiorari in Norfolk Southern Railway Co. v. Shanklin (1999),120 S.Ct. 370, to resolve such issue. Pursuant to an Opinion issued on April 17, 2000, in Norfolk Southern Railway Co. V. Shanklin (2000),120 S.Ct. 1467, the United States Supreme Court resolved the conflict among the federal courts and held that the FHWA regulations addressed the adequacy of warning devices installed using federal funds and, therefore, pre-empt state law actions. In so holding, the United States Supreme Court stated as follows: Sections 646.214(b)(3) and (4) therefore establish a standard of adequacy that `determine(s) the devices to be installed' when federal funds participate in the crossing improvement project. (Citation omitted) If a crossing presents those conditions in (b)(3), the State must install automatic gates and flashing lights; if the (b)(3) factors are absent, (b)(4) dictates that the decision as to what devices to install is subject to FHWA approval. . . .
As a result, once the FHWA has funded the crossing improvement and the warning devices are actually installed and operating, the regulation `displaces(s) state and private decisionmaking authority by establishing a federal-law requirement that certain protective devices be installed or federal approval obtained. (Citation omitted.) Shanklin,120 S.Ct. at 1474.
Sections 646.214(b)(3) and (4) `cover the subject matter' of the adequacy of warning devices installed with the participation of federal funds. As a result, the FRSA pre-empts respondent's state court claim that the advance warning signs and reflectorized crossbucks . . . were inadequate. Shanklin, 120 S.Ct. at 1477.
While the Supreme Court recognized that nothing prohibited a State from using its own or additional federal funds to install more protective devices at railroad crossings, it clearly stated that "[w]hat States cannot do-once they have installed federally funded devices at a particular crossing-is hold the railroad responsible for the adequacy of those devices". Id. at 1476. As established by the affidavit of Susan Kirkland, which was based on her personal knowledge as Manager of Grade Crossing Safety Program for the Ohio Rail Development Commission, federal funds were used to pay for the signs installed at the Howe Road crossing. Since the signs at the Howe Road crossing were installed with federal funds, pursuant to Shanklin, supra., appellee's inadequate signalization claims and in the case sub judice were pre-empted by federal law. Appellant's first assignment of error is, therefore, sustained. Numerous other assignments of error have been raised in this matter both by appellant and appellee. However, as is stated above, the jury, in Interrogatory One-A, indicated that it found appellant negligent in the following respects: "Two prior accidents; railroad did not initiate change in signals signs. Proving ordinary care. Plaintiff unable to see train." Clearly, as evidenced by the above language, the judgment against appellant was based solely on appellee's inadequate signalization claim.
For such reason, based on this Court's disposition with respect to appellant's first assignment of error, the remaining assignments of error in this matter are moot. Accordingly, for the foregoing reasons, the judgment of the Stark County Court of Common Pleas is reversed and final judgment is entered in favor of appellant.
 ______________________ Reader, V.J.
Gwin, P.J. and Hoffman, J. concurs